STEVENS POINT MOTOR COMPANY, Respondent, vs. STEVENS POINT MOTOR SALES, INC., Appellant.

*September 10—October 22, 1946.*

For the appellant there was a brief by *Atwell & Atwell* of Stevens Point, and oral argument by *W. E. Atwell.*

For the respondent there was a brief by *Fisher, Reinholdt & Peichert* of Stevens Point, and oral argument by *R. T. Reinholdt.*

FOWLER, J.   This case is an appeal by the defendant from a judgment entered on a motion by the plaintiff for a judgment on the pleadings.   The complaint set out two contracts out of which the suit arose and demands judgment for the amount for which the judgment was entered.   The answer admits the contracts as alleged and all other facts therein stated except the allegation that the first contract was a consideration for the second.   The second contains the promises to pay, violation of which is the basis of the recovery demanded, and the defendant asserts that the second contract was independent of the first and that there was no consideration for it.   The first contract we will herein designate as (1) and the second as (2).

The following facts are undisputed in the pleadings.   The plaintiff, herein referred to as the "motor company," was

conducting a business of selling automobiles, both new and used, and doing repairs on and selling supplies for automobiles, and had the agency for the sale of Ford cars. Contract (1) was between the motor company, three employees of the motor company, Doyle, Zie, and Behr, and a corporation we will designate herein as the "finance company," which owned the building in which the motor company conducted its business. Doyle, Zie, and Behr desired to purchase the business and assets of the motor company with a view to forming a corporation to carry on said business on the premises on which it was being conducted. They therefore entered into contract (1). It was executed November 7, 1940. By it the motor company was to sell for $11,891.51 cash to Doyle, Zie, and Behr its business and agency and all equipment and supplies except tires made by companies other than the Ford Company, according to an inventory to be made. The finance company was to lease the premises for three years to the purchasers or to their designee, except a portion of the garage building at the time under lease to others than the motor company. The agreement was conditioned on the purchasers receiving the Ford agency. Contract (1) was carried out, and the sales company was subsequently formed and took over the physical assets of the motor company and the premises it occupied. Contract (1) contained other provisions not here material except the following provision:

"It is understood that the Stevens Point Motor Company has a credit in their account with the Wisconsin Industrial Commission for the funds paid in under the re-employment insurance law; there is no transfer of such account, and the matter of such transfer is left open for further negotiations of the parties."

Contract (2) is between the motor company and the sales company and covers the matter reserved by the provision of contract (1), next above quoted. It is dated November 27, 1940.. It recites that *whereas* the purchasers under (1) were

employees of the motor company and "orally agreed that if the sale of the assets of the . . . motor company to a new corporation to be known as the . . . sales company was consummated, that the new corporation *would,* with the approval of the unemployment compensation department of the industrial commission of Wisconsin, *upon the transfer* of the unemployment compensation *fund credited* to the account of the . . . motor company, pay to the . . . motor company seventy per cent of the total amount of said fund held by the state of Wisconsin to the account of said . . . motor company, as of December 1, 1940, less any payments made from said fund to any employees of said . . . motor company not remaining in the employ of the said . . . sales company;" *Therefore,* in consideration of the transfer of the *assets* of the motor company and transfer of the unemployment compensation fund to the motor sales company and the covenants of (2) and "other valuable considerations," the motor company "agrees to fill out an application for transfer of said fund to the sales company and to waive any and all claims to said fund which it may have," sales company to pay in specified instalments seventy per cent of the total amount of said fund held by the state and credited to the account of the motor company.

Contract (2) is not under seal. No other consideration existed for (2) than those above expressly designated. The suit is brought to recover the instalments of (2) unpaid at its commencement.

The answer of the defendant alleges and the defendant contends that under the provisions of (1) the motor company was legally bound to transfer to the sales company all of the *assets* of the motor company "irrespective of whether the said parties to (2) arrived at any agreement whatsoever as to the transfer of the unemployment insurance fund," and that the agreement to pay plaintiff for the fund's transfer, or its transfer, was no part of the consideration of (1) and that there

was no consideration whatever for (2). Defendant further contends that as (2) is not under seal no consideration therefore is presumed, and that there being no consideration for it, it is unenforcible.

The contention that if there is no consideration for (2) it cannot be enforced is not disputed, and the proposition is so generally known to be correct that there is no need to cite authorities to support it.

The question for decision, reduced to its lowest terms, is whether (2) is enforcible. We consider that the transfer of the motor company's interest in the unemployment insurance fund was a valuable consideration for the promise to pay for it in view of: (a) The statutes relating to the unemployment insurance fund; (b) the reservation in (1) relating to that fund; (c) the statement in (1) that the motor company desired to dispose of certain assets used in connection with said business; (d) the admission of the defendant in its answer that "on the 7th day of November, 1940, the said individual incorporators [Doyle, Zie, and Behr] for the benefit of the corporation to be organized [sales company], entered into a contract to purchase the . . . *assets* of the motor company;" and (e) the statement in (2) that the employees (Doyle, Zie, and Behr) of the motor company "entered into negotiations with the . . . motor company for the purchase of the assets of the said business."

It is alleged in the complaint, and not denied in the answer, both that the motor company applied to the proper state authority for the transfer of its credit in the fund to the sales company and that the fund was so transferred. The fact is also so alleged, and not denied, that the motor company's credit in the fund was $2,713.10, and that such credit reduced the amount of its and the sales company's contributions to the fund to one per cent of the annual pay roll of the business.

It is agreed that the fund involved is that created by ch. 108, Stats. By those statutes the fund consists of money

paid to the state by employers subject to the act. Sec. 108.16, Stats. Each employer pays into the fund as standard rate 2.7 per cent of his annual pay roll. Sec. 108.18. Each employer is credited with the amount of his payments. Sec. 108.16 (2) (b). Each employer is assessed upon a lower rate if his "experience" warrants. Sec. 108.18 (3). The amount of the reduction varies and may be as low as one per cent, or even nothing, sec. 108.18 (4) (e) and (f), dependent on the amount of the employer's reserve, which consists of his contributions less the unemployment compensation paid out of his fund to his discharged employees.

Sec. 108.16 (8) (a), Stats., provides that "If the business of any 'employer' is transferred in whole or in part, the transferee shall be deemed a successor for the purposes of this chapter," and further provides that "In case of the transfer of any of the assets of a covered employer's business by any means whatever, otherwise than in the ordinary course of trade, such transfer shall be deemed a transfer of business and shall constitute the transferee a successor hereunder, unless the commission, on its own motion or on application of an interested party, finds that all the following [named] conditions exist." The conditions named did not exist in the instant case. Neither the employer nor the employee has any right to any part of the fund itself. Sec. 108.16 (2) (d). Premiums once paid in to the fund remain in the possession of the state, to be used only for payment of unemployment benefits, so that under no possible condition or eventuality could either the motor company or the sales company become entitled to recover the accumulated reserve or any part thereof for which it might have credit on the books of the industrial commission which is the administrator of the fund.

It is of course plain that the amount of the fund was not included in the $11,891.51 paid for transfer of the physical assets of the company. But this does not exclude the conclusion that the motor company's interest in the fund was

an asset of that company which the parties to (1) contemplated would be transferred to the sales company. It was such asset, and an asset of value to it because it operated to reduce the premiums for unemployment insurance that the motor company was compelled by statute to pay; and by the same token it became a valuable asset of the sales company because it reduced the premium for such insurance that the sales company was required to pay on the transfer of the fund to that company.

It seems plain from consideration of the matters stated in (a) to (e) above that when (1) was executed the parties contemplated that the motor company's interest in the fund was to be included in the things to pass to the sales company when it was transferred to it, and was to be paid for when it was transferred at an amount to be later agreed upon, and that the amount was later agreed upon as seventy per cent of the total amount of the fund. It is immaterial whether the interest in the fund passed pursuant to an application presented by the motor company or without such application. Payment therefor was contemplated by (1) when it should be transferred, and it was transferred, and the amount of the payment was to be determined by subsequent negotiation, and it was so determined. It was not contemplated that the fund itself would pass from the state to the sales company but only the "account,"—the "credit" therefor, which constituted an interest in the fund that was contemplated by (1) would be transferred, the purchase price of which was fixed by (2). By the language of the reservation in (1) there was no transfer of the account by (1) and the matter of the transfer and all matters pertaining thereto were left open for further consideration. Upon such consideration contract (2) was agreed upon and as the interest in the fund was of value to the sales company it supports that contract and the judgment entered.

*By the Court.*—The judgment of the circuit court is affirmed.